(Pickaway Co., O., Common Pleas.)

THE STATE OF OHIO v. ALBERT J. GRIGGSY et al.

THE STATE OF OHIO v. SAMUEL W. MILLER et al.

THE STATE OF OHIO v. THOS. J. MORRIS et al.

(1). County commissioners have the authority to adjudicate claims presented to them by county auditors for services rendered by them, and to determine the amount due thereon, and to allow and order said amount to be paid from the county treasury, in those cases where the law recognizes the liability of the county for some amount on account of such services. And in such cases, the determination and allowance by the commissioners are conclusive upon the county, unless impeached for fraud, or manifest mistake.

(2). In those cases where the law has created no liability upon the county for any sum for the services for which the auditor makes a claim, the allowance thereof by the commissioners is of no effect in law, and any money paid from the county treasury on such a claim may be recovered back.

(3). In an action upon the bond of a county auditor to recover back sums of money received by him from the county treasury for official fees, and which were paid to and received by him without authority of law, it is not sufficient simply to aver that the money sued for was illegally drawn by the auditor.

Such averment tenders no issuable fact, but is a mere conclusion from facts.

Decided January 6, 1899.

NEWBY, J.

These are actions upon the official bonds of the above named defendants given by each as auditor of Pickaway county, Ohio, to recover back several sums received by them as fees while acting as auditor, which sums, it is claimed, are beyond the amounts lawfully coming to them for their services as such officials.

The petition in each case contains a great many causes of action, and they are all demurred to by the defendants.

For the purpose of considering the demurrers, the causes of action may be divided into two classes: One class admits that part of the claims upon which the auditors drew the money was legal, and in such, only what is claimed to be in excess of the amount legally due is sought to be recovered. In this class of cases, the language of the several causes of action is, sub-stantially, that the auditor unlawfully drew from the county treasury, on a warrant presented by him, a certain sum of money on a claim presented by him for said amount for services, on which only a certain sum (a less amount) was legally due. There is no averment as to whether these claims were passed upon and allowed by the commissioners, or not, and facts are not stated upon which is based the conclusion that the sum drawn, or any part of it, was illegally drawn, and no facts are stated upon which the court could say what was legally due.

The other class of cases, are those wherein it is claimed no compensation, in addition to the regular salary attached to the office, is allowed by law for the services for which claims were made by the auditors.

As to this latter class of cases, it is conceded in argument, that where it is disclosed by the causes of action that the services were of such a nature as that the law did not permit any charge to be made for them, that as to these causes of action, the demurrers are not well taken and should be overruled on the authority of Lewis v. The State, 57 Ohio St., 189.

The allegation that the money was "unlawfully" received, is the statement of a mere legal conclusion, and not of an issuable fact, and hence does not aid the petition in any way. The petition should read as if the word "unlawfully" was omitted. Rutter v. Henry, 46 Ohio St., 272 & 274.

So also with the allegation that the sum received is more than was legally due, unless facts be stated from which the court can say what was legally due. Knox Co. Bank v. Lloyd, 18 Ohio St., 353; Larrimore v. Wells, 29 Ohio St., 449; Van Wert v. Webster, 31 Ohio St., 420; Rolling Stock Co. v. Railroad 34 Ohio St., 450 and 467.

It is true the petitions in these cases are modelled after the petition in the case of Lewis v. The State, 57 Ohio St., 189, which was held good on demurrer.

But that case fails to be a precedent here on this question, because, in the Lewis case, enough was stated to show

what the claims were founded upon, and that there was no warrant of law for drawing any sum of money thereon. It therefore, followed, from the facts disclosed, that whatever money was drawn was unlawfully drawn.

I might stop here, and sustain the demurrers to this class of cases, because no facts are stated sufficient to show that money was illegally drawn by the auditors, but only the pleader's conclusion that such was the case. But as the question of the legal effect of an allowance of the claims by the commissioners, (who are by law charged with passing on all claims due the auditor), was fully argued, and will ultimately arise and have to be passed upon, it might as well be disposed of now.

The question we now have for determination, is this: Is it material and necessary for the state to aver that the claims were not presented to and passed upon by the board of commissioners in that class of cases where the county is bound by law to pay some amount for the services or other things demanded and for which payment was made?

The materiality of this averment was not passed upon in disposing of the motions to make the petitions definite and certain by supplying this averment. The office of such a motion is to make more pointed and certain a defective statement of a material fact. It cannot be employed to bring into the record a necessary statement which has been entirely omitted. Such a defect can only be properly met by a demurrer.

If it be necessary for the pleader to allege a certain fact in order to make his pleading sufficient in law to entitle the party to relief, and he omit to make such allegation, then the pleading is open to demurrer for insufficiency, and may not be open to the charge of indefiniteness.

Therefore, the legal effect that must be given to an allowance of a claim against the county by the board of county commissioners, was not determined by the decision on the motions to make the petitions definite and certain, as claimed by counsel for plaintiff, but is up now for the first time.

The law indulges no presumption, from the mere fact that an officer drew money from the county treasury, that he did so unlawfully. And in order to maintain an action to recover back money which it is alleged an officer has unlawfully received, under color of his office, the facts which show the payment to him to be unlawful should be stated, as well as the negative of any fact or facts which would render the payment and receipt of the money lawful, if the claim is one, the payment of which, by reason of the existence of certain facts, would be lawful. This must of necessity be so, if the burden rests upon the state to show the payment to be illegal, and not on the officer to show the negative of the proposition, (which is the foundation of the plaintiff's case), that the money was illegally drawn by him. So that if the presentation of the claim by the auditor, to the commissioners for allowance, and the allowance of it by them have the effect to legally establish the claim, it will be necessary for the plaintiff to aver non-allowance, or to impeach the allowance, if made, on the ground of fraud or mistake, before he can claim that the money was illegally drawn. These petitions do not contain any statement as to whether any of the claims, the payment of which is now complained of, were presented to and allowed, or disallowed, by the commissioners. We now have the question fairly presented, whether if a claim against a county, and lawful to some amount, be presented to and allowed by the board of commissioners of such county, such allowance, in the absence of fraud or mistake, is conclusive upon the public as to the amount allowed? In other words, does the action of the county commissioners, in such a case, have the force and effect of a judgment in law?

The commissioners are a body of limited jurisdiction. They can not go beyond the limits of the powers expressly granted by law. This was clearly announced by the supreme

court in the case of Lewis v The State, 57 Ohio St., 189.

In that case, it was decided that the commissioners are the representatives of the county in its financial affairs, but that they are without power to give sanctity to a claim made against the county by their allowance of it, if the law had created no liability for any part of the claim made. The supreme court was not called upon to decide in that case, and did not decide, what the effect of an allowance of a claim by the commissioners would be where the claim was of a character that the law recognized a liability for it on the part of the county in some amount. They simply said, in the Lewis case, that the claims upon which the auditor drew the money were not valid claims against the county, under the law. for any sum, and the allowance of the claims by the commissioners could not give them validity. That is, the commissioners did not erroneously exercise their jurisdiction, but acted beyond their jurisdiction. There is a vast difference between the erroneous exercise of lawfully granted powers, and the assumption of powers that do not exist at all. While officers are acting within the scope of their lawful powers, their acts, though erroneous, or ill-advised, are binding until set aside by some authority entitled to sit in review.

On the other hand, where officers go beyond the just limits of their jurisdictional powers, their acts become null and void.

Section 894, Rev. Stat., so far as it applies to the cases under consideration provides, that: "No claims against the county shall be paid otherwise than upon allowance of the county commissioners, upon the warrant of the county auditor". The evident aim of this enactment is to provide a tribunal with power to adjudicate claims which may be presented against the county to be paid from the public treasury. It is not only convenient, but absolutely necessary to the protection of the public funds that the power to determine what demands against the county should be satisfied from the county treasury,

should be lodged somewhere with some officer or board; and so the lawmakers made the county commissioners,— three men selected from among, and chosen by the voters of the county,— the depositary of that power. It seems to me to be a gross inconsistency to say that the legislature, recognizing the necessity for this power, devolved it upon a board, and did not intend that their determination of such matters should be entitled to any respect after it was made. Why not let the auditor determine the amount of his compensation for himself, if the determination by the commissioners is no more binding than his would be? There is no room for question that the allowance made to the auditor by the commissioners on claims presented by him to them is final as to him.

Because, first, no claim against the county shall be paid otherwise than upon the allowance of the county commissioners, so that the commissioners can block payment by withholding allowance. And, second, because sec. 896, Rev. Stat., gives a right of appeal to any claimant against the county who may be dissatisfied with the disposition made of his claim by the commissioners.

This section provides as follows:"If a person is aggrieved by the decision of the county commissioners in any case, such person may, within fifteen days thereafter, appeal to the next court of common pleas, notifying the commissioners of such appeal at least ten days before the time of trial, and the court at their next session shall hear and determine the same, which decision shall be final."

Now, while it is conceded that the giving of a right of appeal to the claimant indicates a legislative purpose to make the determination of the matter by the commissioners final and conclusive as against the claimant in all those cases where no appeal is taken, yet, it is insisted, as no right of appeal is given to the commissioners, or any one else than the claimant, there is no evidence of any intention to conclude the county or taxpayers by the action of the commissioners. But, in my judgment, the absence of

any right of appeal in any one other than the claimant, is perfectly consistent with the idea that the action of the commissioners is conclusive upon all concerned. Because the commissioners would not be expected to desire any appeal from a decision they had made themselves, and as they are the representatives of the county in its financial affairs, elected by the people to perform this trust, and therefore represent interests adverse to the claimant, it is fair to presume that the legislature considered that these considerations would furnish a sufficient guaranty that the interests of the county would be duly subserved and protected without any right of appeal for it or on its behalf.

But the inquiry is made, what protection, if this position be correct, have the people against an improvident use of their money? If the commissioners, owing to an imperfect understanding of the law, or to their imprudence, improperly pay out the people's money, what remedy have they?

They have the remedy which is always open to the people when they find they have selected an unworthy servant, and that is to refuse to elect him any more. And as the law now stands, this is the only remedy, where the commissioners act without fraud or mistake and within the true limits of their jurisdiction.

As was said by Judge Minshall in the case of the State ex rel. Herron v. Smith, 44 Ohio St., 374, where the plaintiffs were seeking protection through the courts, against the effect of acts of the Ohio senate, which, it was claimed, were an abuse of that body's legislative functions, "over the wisdom or policy of this legislation this court has no control. In the language of Judge Black, in Sharpless v. Mayor, 21 Pa. St., 162, 'There is no shadow of reason for supposing that the mere abuse of power was meant to be corrected by the judiciary.' The remedy in such cases is with the people." The State ex rel. Herron v. Smith, 44 Ohio St., 374.

So here, if the county commissioners while acting within the limits of their jurisdiction, abuse their powers, the courts can not be appealed to to correct such abuse, and supply a remedy therefor so long as the actions of the commissioners, in such cases, are free from fraud or mistake. But the remedy is with the people.

The argument which counsel for the plaintiff make that unless the law be construed as they claim it, the public might suffer serious loss possesses some force, perhaps, if it were addressed to a legislative body charged with the right and duty of making laws for the good and protection of all the people. But it has little weight when addressed to court whose duty it is to declare and construe the law as it finds it, and not to make it.

I am not responsible for any shortcomings in the law, if there be any.

The remedy for such must come through the legislature, and can not be supplied by the courts. Whether it was wise on the part of the legislature to invest the county commissioners with such extensive powers over the disposition of the public funds, is not for the courts to decide. If the legislature has done so, and the law works a hardship or a wrong in some cases, their duty may be to change the law.

I hold, upon the present state of the law, that when a claim against the county and in favor of the auditor, and having a legal basis for some amount, is presented to the commissioners, and by them allowed, such allowance, until it is impeached for fraud, or collusion, or manifest mistake, or vacated by appeal on the part of the auditor, is binding and conclusive upon both the auditor and county. Consequently, no money drawn from the county treasury, by the auditor, in this class of cases can be said to have been illegally drawn, if the claim had first been acted upon by the commissioners, and an entry, authorized by them, put upon their journal allowing the claim, so long as such allowance is not attacked and annulled. And this, I understand to be the rule laid down by the supreme court of Ohio in the case of the Commissioners of Hamilton County v. Noyes, 35 Ohio St., 201.

. It appears from the facts disclosed in the report of this case, that Governor Noyes, while holding the office of probate judge of Hamilton county, did some work on account of the county under a contract therefor with the commissioners, and for the service thus rendered, drew a large sum of money from the county treasury upon the order and allowance of the county commissioners. Afterwards, it being claimed that the contract was not legally made, a suit was brought to recover back the money paid under the contract, and the case went to the supreme court where it was held:

"Where work has been done on account of the county, under an agreement with the commissioners, and has been accepted and paid for, no action lies at the suit of the commissioners, in the absenc of fraud or mistake, to recover back the money thus paid."

No importance, in the decision of this case, was attached to the fact that the action was prosecuted in the name of the commissioners, which was the body which had made the contract and settled for the work. In fact, their right to maintain such an action, where it lies at all, is expressly upheld in this case.

In the opinion by Judge White in the Noyes case on page 207, it is said:

"No fraud is alleged to have been practiced on the commissioners in inducing them to allow the claim and to order its payment, nor is it alleged that the allowance or order was made under any mistake.

"Now, it certainly requires neither argument, nor the citation of authorities, to show where work has thus been done on account of the county, under an agreement with the commissioners, and has been accepted and paid for, that they can maintain no action, in the absence of fraud or mistake, to recover back the money thus paid."

The effect of this decision is, that whatever right the county might have possessed to defeat the payment of this money, was cut off by the allowance of the claim by the commissioners, unless this action on their part could be impeached for fraud or mistake.

The case of Ridenour et al. v. The State of Ohio, decided by the circuit court of Paulding county, and reported in vol. 14 C. C. Rep., page 393, was an action brought against Ridenour, as auditor of the county, and his bondsmen, to recover back money which he had received for services in excess of the true amount due him therefor.

The circuit court held that the allowance of the claims by the commissioners defeated the right of action. In the second proposition of the syllabus it is said, "If the claim (of the auditor) is disallowed in whole or in part, his only remedy is by appeal to the court of common pleas. But where such claims have been allowed by the commissioners, and their allowance spread upon the minutes of the board, an action upon the official bond of the auditor to recover back as illegal and excessive, parts of the bills so allowed, will not lie, so long as the record of such allowance is not impeached for fraud or collusion—such allowance being in the nature of a judicial act."

The supreme court in the case of Lewis v. The State, 57 Ohio St., 189, says:

"The board of county commissioners represents the county, in respect to its financial affairs, only so far as authority is given to it by statute. It may pass upon and adjudicate claims against the county for services in a matter, which, under the statutes, may be the subject of a legal claim against the county. But it is without jurisdiction to entertain or adjudicate claims which in themselves are wholly illegal and of such a nature as not to form the subject of a valid claim for any amount. And an attempt by the board to allow a claim of such character will not bind the county."

In this case, the supreme court were not called upon to say what the effect of the allowance by the commissioners would have been, if there had been a legal basis for a claim for some amount. But, Judge Spear in the opinion in this case, on page 217, does say, "that the cases at bar are essentially different in their facts, and we think in the principle of law involved,

from that of Commissioners v. Noyes, 35 Ohio St., 201", thus showing that the authority of the Noyes case was not denied or doubted when the facts were such as to render the county liable to the auditor for some amount, and thereby give the commissioners jurisdiction to adjudicate the claim and fix the amount to be paid. In fact, we here have a recognition that a case may arise where the commissioners might conclusively act upon it in obedience to the principle announced in the Noyes case.

Numerous authorities have been cited by counsel upon both sides from other states shewing a conflict of holding upon this question by the courts of last resort of such states. I do not deem it profitable or necessary to take time in an analysis or discussion of these various outside decisions, for the reason that I consider the law applicable to the cases under consideration has been settled by our own supreme court. I will remark, however, that quite a number of the cases cited by counsel for plaintiff in their brief, while they dispute the proposition that the action of the commissioners in allowing the claim has the conclusive and binding effect of a judgment of a court, nevertheless, hold, that such action of the commissioners has the force and effect that a settlement would have between private individuals. It seems to me that so far as this question here is concerned it makes no practical difference which view be adopted as to the effect of the commissioners' allowance of the claims, whether their actions arise to the dignity of judgments, or merely of settlements between private individuals. Because, in either event, the action of the commissioners would make the payment to the auditor in pursuance thereof *prima facie* legal, and the burden would rest upon him who affirms the invalidity of the payments to destroy, in some way, this *prima facie* case against him.

If a party suing disclose the fact in his petition that the claim sued upon has been settled by him and the defendant, his petition would be bad on demurrer unless he stated facts which would in law nullify such settlement.

As these actions are brought to recover money alleged to have been illegally drawn from the county treasury, the duty rests upon the plaintiff to state the facts which he claims support the charge that the money was illegally drawn, so that the court may say, from the facts stated, whether the officer could lawfully draw the money. If the petition discloses enough of the character of the claim upon which the money was drawn to show that no liability could rest upon the county to pay any part of it, then enough is disclosed to justify the conclusion that the money drawn for that purpose was illegally drawn.

But if the character of the claim is not shown to be as above stated, or if it appear affirmatively that the claim paid had a legal basis for some amount, and the only complaint is that an excessive amount was paid, then facts must be stated showing what amount the law would say was correct, and further that the excess was drawn in violation of law. And to make the drawing of money on such a claim unlawful, it must appear either that the claim was not allowed at all by the commissioners, or if allowed, that such allowance was made in fraud or mistake.

The demurrers to the several causes of action founded upon claims belonging to the first class of cases named will be sustained, and overruled as to those falling within the second class.

Irvin Snyder, Prosecuting Attorney, H. J. Booth and C. C. Chappellear, for Plaintiff.

Chas Dresbach, Abernethy & Folsom, and Smith & Morris, for Defendants.